# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DANIEL D. SOTO,

    Plaintiff,

vs.                                                  Civil No. 10-0043 WJ/ACT

VILLAGE OF MILAN POLICE DEPARTMENT,
OFFICER SHANE HARGER and OFFICER LEE
EATON, personally and in their official capacities
as police officers employed by the
VILLAGE OF MILAN POLICE DEPARTMENT,
the CITY OF GRANTS POLICE DEPARTMENT,
OFFICER JASON FANK and OFFICER
JESSI NIETO, personally and in their official
capacities as police officers employed
by the CITY OF GRANTS POLICE DEPARTMENT,
CORRECTIONS CORPORATION OF AMERICA,
d/b/a CIBOLA COUNTY DETENTION CENTER,
UNKNOWN CORRECTIONS OFFICERS AND
EMPLOYEES employed by the CIBOLA COUNTY
DETENTION CENTER, and the BOARD OF COUNTY
COMMISSIONERS OF CIBOLA COUNTY,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING AND DENYING IN PART PARTIAL MOTION TO DISMISS BY COUNTY DEFENDANT

THIS MATTER comes before the Court upon a Partial Motion to Dismiss filed on May 26, 2010 by Defendant Board of County Commissioners of Cibola County **(Doc. 12)**. Having considered the parties' briefs and the applicable law, I find that Defendant's motion is well-taken and granted with regard to Counts III, IV, and V, but is denied with regard to Count II.

### Background

Plaintiff alleges excessive force in connection with his arrest which took place on or

about November 9, 2008.  Following his arrest, Plaintiff was transferred to Cibola County Detention Center ("CCDC").  The Complaint also alleges a failure to provide timely and adequate medical attention for the injury to his left, small finger which resulted from the force that was used; and states that Plaintiff was forced to sleep on the floor while incarcerated at CCDC, despite his complaints to the facility nurse and corrections officers.

Plaintiff received medical treatment on November 29, 2008, and surgery was performed the following month on Plaintiff's left hand and little finger at University Hospital in Albuquerque, New Mexico.  Plaintiff alleges that surgery was not effective to set the broken finger bone, and that he will likely require further surgery.  He remained at CCDC until his release in early January, 2008 when the charges against him were dismissed.[1]  Plaintiff seeks damages for permanent disfigurement and  permanent loss of the use of the injured finger.

## Discussion

Defendant Board of County Commissioners of Cibola County ("County Defendant" or "Defendant" for purposes of this Order) seeks dismissal of Counts II, III, IV and V on the grounds that these counts fail to state a claim for which relief can be granted against the County Defendant.  Count II is brought under 42 U.S.C. § 1983, alleging a failure to protect Plaintiff from harm and negligently causing Plaintiff extreme pain and great bodily harm in deprivation of his constitutional rights.  Counts III, IV and V allege state tort claims, alleging assault and battery (Count III), negligence resulting in personal injury (Count IV), and negligent supervision and retention (Count V).[2]

---

[1] The Complaint states that he was released "January 5, 2008," but the Court assumes Plaintiff's release date to be January 5, *2009*.  *See* Compl., ¶ 42.

[2] Count I alleges a claim of excessive force brought under the federal and state constitutions, which is asserted only against defendant officers, and not against the County Defendant.

2

**I.      Legal Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 ((*quoting Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1967 (2007)). While the well-pled factual allegations of a complaint must be accepted as true for purposes of a motion to dismiss, neither conclusory allegations nor legal conclusions disguised as factual allegations need be accepted as such. *See Bell Atlantic*, 127 S.Ct at 1965.

Plaintiff alleges Count II in the context of a claim brought under 42 U.S.C. § 1983, stating that the defendant officers and CCDC had a duty to protect him from harm and to provide him with reasonable and necessary care while in its custody; that CCDC breached its duty and knowingly or negligently caused the Plaintiff extreme pain and great bodily harm in deprivation of Plaintiff's rights under the federal and state constitutions; and that the alleged actions were the result of negligent and inadequate instruction, supervision and retention of the officers and employees by CCDC and the County Defendant. Compl., ¶¶ 60-63.

Defendant contends that Plaintiff alleges no facts which can support a theory of liability against CCDC, particularly because Count II alleges a failure to protect which seeks to hold CCDC liable under a theory of respondeat superior. In *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978), the United States Supreme Court held that municipalities cannot be held liable under §1983 on a respondeat superior theory, but rather are subject to § 1983 liability only for their official policies or customs, the execution of which

causes a plaintiff's injuries. *Id*. at 694; *Johnson v. Johnson*, 466 F.3d 1213, 1215 (10th Cir. 2006). Further, there must be an "affirmative link" or causal connection between the policy and a particular constitutional violation alleged. *City of Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985).

## II.    Count II - Denial of Medical Care

The Eighth Amendment provides prisoners the right to be free from cruel and unusual punishments. This right is violated if prison officials show "deliberate indifference to an inmate's serious medical needs." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prison official does not violate this standard, however, "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).[3]

The test for constitutional liability of prison officials "involves both an objective and a subjective component." *Id.* The prisoner must first produce objective evidence that the deprivation at issue was in fact "sufficiently serious." *Farmer*, 511 U.S. 825, 834 (1994)

---

[3]    The protections of the Eighth Amendment apply only to convicted inmates. *See Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). It is not clear whether Plaintiff was an arrestee or a pretrial detainee. However, the Fourteenth Amendment's Due Process Clause guarantees arrestees and pretrial detainees the same degree of medical attention as the Eighth Amendment provides for inmates. *See Martin v. Board of County Comm'rs*, 909 F.2d 402, 406 (10th Cir. 1990); *Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999) (noting that although pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, but applying an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983 to pre-trial detainee plaintiff's claims for failing to prevent assault and to respond to detainee's medical needs); *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979) (deliberate indifference standard applies to pretrial detainees).

(citations omitted).  A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind. *See Estelle*, 429 U.S. at 106. The subjective component is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Estelle*, 429 U.S. at 104-105 (deliberate indifference is manifested by prison personnel "in intentionally denying or delaying access to medical care").

Defendant argues that the facts as alleged do not state a constitutional claim for denial of medical care.  Even assuming that Plaintiff's injury to his little finger constitutes a serious medical need under the Eighth Amendment, the allegations in the complaint do not suggest that CCDC responded to the injury – or failed to respond – with deliberate indifference.

A. Relevant Facts

The allegations begin with Plaintiff's arrest, although there is no explanation for why Plaintiff was arrested.  Plaintiff charges Defendant Fank with causing the injury by using excessive force in handcuffing and placing Plaintiff in the police car.  He also charges Defendant officers with deliberate indifference to his complaints of pain and requests for medical attention following the arrest.  Plaintiff was transferred to CCDC on November 10, 2008, where he allegedly showed corrections officers his left hand and told them that he was in severe pain.[4]

---

[4] Plaintiff also alleges that he requested permission to make a telephone call to inform relatives that he was in CCDC and was injured and in need of medical care.  He states that the

5

Plaintiff asserts that the corrections officers refused Plaintiff's request for medical attention. Compl., ¶ 22.  At the same time, however, Plaintiff did see a medical provider at the facility – in fact, "[o]n several occasions" – during which times he complained to the medical provider about the pain and condition of his finger.  ¶ 26.  Plaintiff alleges that these complaints were "ignored or downplayed."

On November 27, 2008, Plaintiff was assaulted by another prisoner, injuring his right shoulder.  He was transported to the emergency room at Cibola General Hospital, where his shoulder was examined and treated.  While he was there, Plaintiff informed the emergency room doctor about his small finger injury.  His finger was x-rayed but was misdiagnosed as having a dislocation instead of a fracture.  Cibola General Hospital referred Plaintiff to University Hospital in Albuquerque for further evaluation and treatment.  ¶ 30-31.  According to the complaint, the medical staff at University Hospital told Plaintiff that the injury to his finger was serious because of the amount of time the finger remained untreated, and that he needed surgery. Amputation of the finger was also considered as an alternative.  Plaintiff was prescribed painkillers and other medication by University Hospital.  ¶¶ 35-37.

On December 15, 2008, surgery was performed at University Hospital on Plaintiff's left hand and little finger.  However, the surgery was not effective to set the broken finger bone, due to scar tissue and ossification which had formed during the weeks prior to his medical treatment at the hospital.  ¶¶ 38-39. Plaintiff asserts that he has been told by the attending surgeon that he will continue to suffer from pain and stiffness to the finger, and will likely require further surgery and physical therapy.  He now has a permanent impairment of his left hand and finger

---

corrections officers refused his request for an immediate telephone call, and was not able to call until the following day.  The facts relating to the telephone call are not only irrelevant to the claims against CCDC for denial of medical care, but also moot, since Plaintiff did make a call to relatives the following day.  *See* Compl.,¶¶ 20-23.

which has forced him to abandon his former job, which required physical labor and manual dexterity. Instead, he can find only part-time employment at lesser wages. ¶¶44-45.

Plaintiff remained at CCDC until early January, 2008, when the charges against him were dropped and he was released.

B.      Analysis

The complaint comes perilously close to lacking factual allegations which would support a § 1983 claim against the County Defendant. The thrust of Plaintiff's claim against the County Defendant is that it had a duty to regularly and carefully inspect the county jails, pursuant to state statute.[5] Violations of state statutes do not give rise to § 1983 claims. *See, e. g.*, Medina v. Cram, 252 F. 3d 1124, 1133 (10th Cir. 2001) (claims based on violations of state law and police procedure are not actionable under § 1983.); *Romero v. Board of County Com'rs of County Lake, State of Colo.*, 60 F. 3d 702, 705 (10th Cir. 1995) (accord). Plaintiff assures the Court and opposing counsel that he is not claiming state law or statute as a basis for his § 1983 claim – but that is exactly what he is doing, particularly when Plaintiff frames the claim as one arising from a "duty" which CCDC had by virtue of that state statute. References to state law claims abound in Count II, such as "breach of duty" and "negligently caused." *See* Compl., ¶¶ 61, 62; *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (Deprivations of an individual's constitutional rights must amount to more than mere negligence).

Plaintiff's complaint is thoroughly confusing. With regard to Count II, it seems as though Plaintiff himself is not sure of whether he is asserting a claim under state law or § 1983.

---

[5] Plaintiff refers to NMSA 1978 § 33-3-4, which states in part that:
 "governing bodies of the several counties or municipalities or this state shall be the inspectors of the jails in their respective counties and shall visit them at least twice a year and shall carefully examine the condition of each cell as to cleanliness and discipline. . . ."

7

For example, ¶ 62 (as part of Count II) alleges a breach of duty by all Defendants which caused Plaintiff's injuries. This language does not, by any stretch of construction or imagination, allege a claim brought under § 1983.  The next two paragraphs, however, allege failure to supervise and train, which can be construed as stating a claim of municipal liability under § 1983.  ¶¶ 63-64.

In the face of such basic deficiencies and lack of clarity in the language of Count II, the Court considered granting Defendant's motion.  However – and fortunately for Plaintiff –  the Court is giving Plaintiff the benefit of the doubt this time, based on the fact that a few of the allegations in Count II could conceivably support a § 1983 against the County Defendant at this stage of the litigation.[6]  In the future, unless Plaintiff is asserting a state law claim, he should eliminate all reference to language that is more compatible with state tort law and has nothing to do with constitutional torts.

Therefore, I find that Plaintiff has sufficiently alleged a § 1983 claim against the County Defendant.  The Complaint states:

> As a direct result of the unconstitutional, unlawful, unreasonable and malicious refusal of the defendants Milan and Grants police officers, and the officers and employees of CCDC, to provide reasonable and necessary medical treatment for the Plaintiff's injuries, which constituted **deliberate indifference** to his serious medical needs, the Plaintiff has suffered pain and continues to suffer pain, and has a permanent disfigurement, stiffness and a permanent loss of the use of his left little finger.

Compl., ¶ 50 (emphasis added).  Defendant claims that Plaintiff did not suffer from a serious medical need, which is required in an Eighth Amendment claim.  However, the factual

---

[6] As though prodded by Defendant's analysis in the motion, Plaintiff's response focuses more on constitutionally grounded sound bites and less on the state statute.  Still, Plaintiff does not let go of language that is grounded more in state tort law than in federal constitutional law.  On page 8 of the Response, for example, Plaintiff states, "If the County had performed its *duties* under the statute, the *need for training* of police officers and corrections officers would have been apparent" (emphasis added).  The sentence is a virtual hybrid of a negligence claim and a vaguely possible § 1983 claim for failure to supervise.

allegations suggest otherwise. Plaintiff constantly complained of the pain to the arresting officers, to the corrections officers after being transferred to CCDC, and to the medical providers at the facility. His discomfort was substantial enough to require pain-killers, and he eventually needed surgery (and possibly amputation) to address the injury. These facts are sufficient to allege an injury that even a layperson would recognize as needing a doctor's attention. The fact that CCDC medical providers did not diagnose the problem as mandating treatment does not drive the inquiry here; the point of the complaint is that those individuals should have recognized the seriousness of his injury, except for their alleged indifference to Plaintiff's complaint. *See, e.g., Reed v. Cameron,* 2010 WL 1952660 (3rd Cir. 2010) (prisoner's allegations of more than mere dissatisfaction or disagreement with his medical care were sufficient plead deliberate indifference to his serious medical needs, as required for his § 1983 action alleging violations of the Eighth Amendment).

 Plaintiff states that the first medical examination or treatment he received since the injury to his finger on November 9, 2009 was at Cibola General Hospital on November 27, 2008. Compl., ¶ 32. This is inconsistent with his assertion that he visited with medical providers at CCDC "[o]n several occasions." ¶26. Plaintiff was clearly dissatisfied with the care that he received there, but that alone does not form a basis for a denial of medical care under the Eighth Amendment. It is a long way from alleging unconstitutional acts on the part of the Defendant officers or the CCDC medical providers, to alleging a viable claim against the County Defendant. There are no details in the complaint concerning what kind of examination (if any) was made or what observations were made by the CCDC medical providers during those visits. It is also not clear whether those medical providers were employees of the County Defendant, or whether the medical care was contracted to another entity. Finally, even if the facts unfold to show a deliberate indifference on the part of the Defendant officers or the medical providers at

CCDC, those facts would not be enough to assert a claim against the County Defendant. Plaintiff would have to show some evidence that the County Defendant's failure to train or supervise caused the acts resulting in the injury, and was in itself deliberately indifferent to Plaintiff's constitutional rights.[7]

Plaintiff sufficiently alleges facts which could amount to a deliberate indifference on the part of the corrections officers and the medical providers at CCDC. Compl., ¶¶ 26, 27. He also sufficiently alleges that a delay in treatment caused him injury. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir.2001) (delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm."). The substantial

---

[7] The instant motion to dismiss was filed by the County Defendant, which argues that it was not ever aware of Plaintiff's incarceration. However, awareness of Plaintiff's incarceration is not the lynchpin to the analysis for an § 1983 claim. It is worth noting that neither local police departments nor detention centers are proper suable entities for purposes of § 1983. *See White v. Utah*, No. 00-4109, 2001 WL 201980, at *1 (10th Cir. Mar. 1, 2001) (A detention center is not a suable entity for purposes of 42 U.S.C. § 1983) (citing *Aston v. Cunningham*, No. 99-4156, 2000 WL 796086, at *4 n.3 (10th Cir. June 21, 2000) ("Dismissal against this entity was also required because a detention facility is not a person or legally created entity capable of being sued."); *Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991) (While municipalities and other local government units are considered "persons" under § 1983, local governmental departments generally are not) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *see White v. State of Utah*, No. 00-4109, 2001 WL 201980, at *1 (10th Cir. Mar. 1, 2001) (Dismissal against detention facility required because it was "not a person or legally created entity capable of being sued."); *See Aston v. Cunningham*, No. 99-4156, 2000 WL 796086, at *4 n.3 (10th Cir. June 21, 2000) (unpublished opinion) (dismissing detention facility as a proper party in § 1983 action); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68-69 (1997) (Dept of Corrections is not a "person" subject to suit under §1983).

The question then becomes whether the County is the proper suable entity for either or both the local police departments and/or the detention facility. The Court offers no further comment on the issue further except to point out that this is the reason why the County's "lack of awareness" of Plaintiff's incarceration is a rather simplistic and incomplete defense. However, while the County Defendant may in fact be the proper entity to sue in a claim brought under § 1983, the County may not be found liable for alleged unconstitutional conduct on the part of police officers, police departments, corrections officers or detention centers unless and until the plaintiff proves that a County policy or custom was the "moving force" behind the alleged injury. *See Johnson v. Johnson*, 466 F.3d 1213, 1215 (10th Cir. 2006); *see also Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 405 (1997).

harm requirement for an Eighth Amendment violation "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir.2001). Plaintiff asserts that the medical staff at University Hospital told him that the gravity of the injury was due to the amount of time his finger was left untreated (Compl., ¶ 35); that he has sustained permanent impairment and disfigurement to that hand and finger; and that timely and adequate medical attention would likely have prevented or reduced the amount of permanent damage. Compl., ¶¶ 44-47.

Plaintiff will eventually be required to show evidence to support his allegations. For now, I find that Plaintiff has stated a claim for relief, based on an Eighth Amendment denial of medical care, which is plausible on its fact, and for which it is reasonably likely Plaintiff can provide factual support for such a claim.

### III. Count II – Cruel and Unusual Punishment[8]

Plaintiff asserts that Defendant inflicted "cruel and unusual punishment" on him by forcing him to sleep on the floor of CCDC while he was incarcerated there, despite his complaints to the facility nurse and corrections officers. According to the complaint, Plaintiff was placed in a cell to sleep on the floor, both prior to having surgery and then also when he returned from the hospital after surgery. Compl., ¶¶ 27, 37, 41, 53 and 56.

The Eighth Amendment requires jail officials "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir.1998). To hold a jailer personally liable for violating

---

[8] The Court assumes that Plaintiff's claims for "cruel and unusual punishment" are brought under the Eighth Amendment, although there is no mention of the Eighth Amendment anywhere in the Complaint.

11

an inmate's right to humane conditions of confinement, a plaintiff must satisfy the same two objective and subjective components that are part of a claim of denial of medical care. *See Craig v. Eberly*, 164 F.3d 490 (10th Cir. 1998).

Defendant argues that the County Defendant did not violate Plaintiff's rights by requiring Plaintiff to sleep on the cell floor at CCDC.[9]  In support of this argument, Defendants rely on *Rhodes v. Chapman*, 452 U.S. 337 (1981).  However, *Rhodes* is not sufficiently analogous to the facts alleged in this case to support a dismissal of Plaintiff's claim.  In *Rhodes*, the question was whether the housing of two inmates in a single cell at the Southern Ohio Correctional Facility was cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments.  The United States Supreme Court determined that it was not, finding that such a practice did not involve the wanton and unnecessary infliction of pain.  452 U.S. at 347.  To the extent that such conditions could be viewed as restrictive and even harsh, the Supreme Court found that "they are part of the penalty that criminals pay for their offenses against society." *Id*. at 347.

In this case, Plaintiff asserts that he had to sleep on the floor. He does not explain whether he was forced to sleep on the floor every night of his two-month incarceration or whether he slept on a mattress.  He does not explain what reasons he was given for having to do so.  If overcrowding was the cause, Plaintiff's claim would likely fail.  *See Rhodes*, 452 U.S. at 346 ("unnecessary and wanton" inflictions of pain are those "totally without penological justification); *Crowe v. Leeke*, 540 F.2d 740, 741 (4th Cir. 1976) (cramped cell conditions did not violate Eighth Amendment where there was no evidence that overcrowding resulted from arbitrary or capricious exercise of judgment by prison officials).  Similarly, if Plaintiff slept on a mattress on a floor, or if this was temporary, the claim would also likely fail, as such conditions

---

[9] As mentioned previously, the Court assumes for now that the County Defendant would be the proper suable entity in claims brought against CCDC.

would not rise to the level of a constitutional level.[10]

Taking the assertions in the complaint literally, Plaintiff was forced to sleep on the *floor* (not on a mattress), while incarcerated (¶ 27), both before and after his surgery (¶¶ 37 & 41). This is sufficient to state a claim based on conditions of confinement. That being said, in order succeed on a claim against the County Defendant, Plaintiff would still have to show the existence of a custom or policy which was the moving force behind the allegedly unconstitutional conditions.

**IV.    Whether Counts III, IV and V State a Claim**

Defendant contends that Counts III, IV and V alleging claims under the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1 et seq., must be dismissed because Plaintiff failed to submit a notice of tort claims. Plaintiff concedes that he did not file a timely tort claim, but states that these counts relate to civil rights violations which he is bringing under 42 U.S.C. § 1983. The Court has no idea what Plaintiff means by this – either he is bringing state law claims

---

[10] *See, e.g., Blackwell v. Selig*, 26 Fed.Appx. 591, 2001 WL 1646104 (8th Cir. 2001) (County prisoner's having to sleep on floor on four-inch thick mattress for five nights did not amount to unconstitutional condition of confinement, particularly where prisoner failed to show that prison officials knew he suffered pain whenever he raised mattress to allow cell door to be opened); *Fischer v. Ellegood*, 238 Fed.Appx. 428, 433-434, 2007 WL 1624315, 4 (11th Cir. 2007) (sleeping on floor or on unwashed bed linens did not amount to Eighth Amendment violation – "at least not when the duration is only five days."); *Mack v. Nichols*, 1989 WL 51386, 1 (6th Cir. 1989) (crowded conditions at jail resulting in forcing plaintiff to sleep on a floor mattress for two days in a crowded cell did not amount to the level of wantonness necessary for a pretrial detainee to state a claim for a violation of his due process rights); *Crowe v. Leeke*, 540 F.2d 740, 741 (4th Cir. 1976) (where inmate alleged that third inmate in cell is forced to sleep on floor due to overcrowding, and where he did not allege mental abuse or corporal punishment, nor deprivation of basic implements of personal hygiene, these conditions did not reach constitutional proportions, affirming dismissal of complaint); *Sayles v. Anderson*, 2010 WL 234909, 3 (D.S.C.,2010) (noting that a review of federal case law "suggests that temporarily placing inmates on mattresses on the floor is not unconstitutional." *Cmp Wright v. McMann*, 460 F.2d 126, 129 (2d Cir.1972) (finding claim of cruel and unusual punishment in confining an inmate for eleven days, naked, without soap, towels, or toilet paper, and without bedding of any kind, and forcing the inmate to sleep on the floor with the temperature being "sufficiently cold to cause extreme discomfort.").

under the Tort Claims Act, or he is not. Inasmuch as the facts which are part of the state law claims "relate" to claims brought under § 1983, those facts have been alleged as § 1983 claims. Thus, there is little left to do except to dismiss the state law claims.

## Conclusion

I find and conclude that Plaintiff has alleged a § 1983 claim in Count II of the complaint alleging denial of medical care and unconstitutional conditions of confinement. However, Plaintiff's state law claims asserted in Counts III, IV and V shall be dismissed for failure to comply with the notice requirements of the New Mexico Tort Claims Act.

**THEREFORE,**

**IT IS ORDERED** that the County Defendant's Partial Motion to Dismiss (**Doc. 12**) is hereby GRANTED IN PART and DENIED IN PART, for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE